## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

WESTFIELD INSURANCE COMPANY,   )
                                       )
             **Plaintiff,**        )
                                       )
**v.**                                 )        **Civil Action 5:13-12818**
                                       )
**CARPENTER RECLAMATION, INC.,**   )
                                       )
            **Defendant.**       )

### MEMORANDUM OPINION AND ORDER

On January 23, 2014, Defendant Carpenter Reclamation, Inc. [Carpenter], filed its Second Motion to Compel Full, Complete and Meaningful Discovery Responses by Westfield Insurance Company [Westfield], Motion to Compel Westfield to Designate Representative(s) to Testify, and Produce Responsive Documents in Response to Carpenter's Rule 30(b)(6) Notice of Deposition and Rule 34 Duces Tecum, and in the Alternative Second Motion to Strike, and *in Limine* to Exclude Westfield's Evidence and Carpenter's Motion to Disqualify Westfield's Counsel and Memorandum in Support. (Document Nos. 101 and 102.) On February 6, 2014, Westfield filed its Response. (Document No. 111.) On February 12, 2014, Carpenter filed its Reply. (Document No. 113.)

### THE PLEADINGS

On May 31, 2013, Westfield Insurance Company [Westfield] filed its Complaint for Declaratory Relief naming Carpenter Reclamation, Inc. [Carpenter], and the Board of Education of Greenbrier County [the Board] as Defendants. (Document No. 1.) Allegedly, in February, 2010, Carpenter entered a contract with the Board to perform site preparation work for the construction of Lewisburg Elementary School. (Id., ¶¶ 2 and 5.) Under the contract, Carpenter was required to prepare space for the construction of the school at a certain specified elevation and allegedly went

deeper requiring other contractors to provide services and materials in addition to those anticipated initially to accommodate Carpenter's non-conforming work.  (Id., ¶¶ 8 - 11 and 13.) Westfield alleges that Carpenter was covered under a Commercial General Liability policy of insurance including Commercial Umbrella Coverage with Westfield between December 1, 2010, and December 1, 2011. (Id., ¶¶ 2, 28 and 44.) In February, 2013, the Board initiated a lawsuit in the Circuit Court of Greenbrier County against Carpenter and the other contractors asserting Carpenter's breach of contract. (Id., ¶¶ 1 and 36.) Westfield claims and seeks the District Court's declaration that its policies of insurance do not cover Carpenter for the losses which the Board claimed and Westfield had no duty to defend Carpenter in the lawsuit initiated by the Board.

On June 19, 2013, Carpenter filed its Answer to Westfield's Complaint and Counterclaim for Money Damages and Declaratory Relief. (Document No. 12.) Carpenter admits it was insured under Westfield's Commercial General Liability policy (Id., p. 8, ¶ 28.) but denies Westfield's allegations that the policy does not provide coverage and Westfield is entitled to the declaratory relief which it requests. By its Counterclaim, Carpenter alleges that Westfield's policy of insurance covered the circumstances alleged by the Board in its Complaint, Westfield improperly denied coverage to Carpenter (Id., p. 16, ¶¶ 9 and 10.) and Westfield's failure to provide coverage and a defense constituted the breach of its contract of insurance (Id., p. 27, ¶¶ 17 - 22.); breach of the implied covenant of good faith and fair dealing (Id., pp. 27 - 28, ¶¶ 24 - 25.); breach of fiduciary duty (Id., p. 28, ¶¶ 28 - 30.); bad faith (Id., pp. 28 - 29, ¶¶ 34 - 40.); and entitlement to punitive damages (Id., pp. 29 - 30, ¶¶ 42 - 45.).

On July 9, 2013, Westfield filed its Answer to Carpenter's Counterclaim denying Carpenter's allegations and asserting a number of affirmative defenses. (Document No. 14.)

**CARPENTER'S SECOND MOTION TO COMPEL AND WESTFIELD'S RESPONSE**

In its Second Motion to Compel (Document No. 101.), Carpenter requests that (1) the Court conduct an *in camera* examination and require disclosure of certain documents which Westfield identified in its December 23, 2013, Supplemental Objection and Privilege Log attached to its Second Supplemental Responses to Carpenter's First Set of Requests for Production of Documents including an April 30, 2013, letter from Westfield's attorney in this matter to its Claims Representative, Ms. McConkey[1]; (2) require Westfield to designate representatives to testify in

---

[1] Westfield's Supplemental Objection and Privilege Log states as follows respecting the documents which Carpenter is requesting the Court to examine *in camera* and require Westfield to disclose (Document No. 101-3.):

| | |
|---|---|
| 3 - 27 | April 30, 2013, letter from Brent Kesner to Judy McConkey regarding opinion on duties to defend and indemnify with recommendations for further action. Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or is otherwise privileged and confidential and is not being produced at this time. |
| 28 | April 10, 2010, Matter assessment containing opinions of counsel on activity plan. Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or is otherwise privileged and confidential and is not being produced at this time. |
| 1018 | April 9, 2013, letter from Judy McConkey to Brent Kesner concerning requests for a coverage opinion. Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or is otherwise privileged and confidential and is not being produced at this time. |
| 1019 | April 16, 2013, letter from Judy McConkey to Brent Kesner concerning request for a coverage opinion. Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or is otherwise privileged and confidential and is not being produced at this time. |

response to Carpenter's Rule 30(b)(6) Notice and cooperate in setting dates for the depositions of Westfield's agents and retained experts; (3) require Westfield to further answer Carpenter's First Set of Interrogatories and Request for Production of Documents[2]; and (4) order the alternative relief requested if Westfield refuses to comply. (Id., pp. 2 - 5.) Respecting its request respecting Westfield's December 23, 2013, Supplemental Objection and Privilege log, Carpenter states that it served its First Set of Interrogatories, Request for Production of Documents and Request for Admissions upon Westfield on July 23, 2013, and Westfield provided responses to Carpenter's discovery requests on September 19, 2013, but failed to disclose "the April 30, 2013, letter to Ms. McConkey bearing on the insurer's duties to defend and indemnify Carpenter . . . or to claim or assert any protection or privilege in discovery in September, 2013, as to that letter (and others),

---

| | |
|---|---|
| 1056 – 1080 | April 30, 2013, letter from Brent Kesner to Judy McConkey containing coverage opinion and recommendations for further action. Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or is otherwise privileged and confidential and is not being produced at this time. |
| 1112 – 1113 | June 7, 2013, letter from Brent Kesner to Judy McConkey concerning filing of answers and counterclaims in the Greenbrier County Circuit Court action as well as motions to dismiss and impact of same upon litigation and coverage issues. Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or is otherwise privileged and confidential and is not being produced at this time. |

[2] Respecting Carpenter's request number 2, The Court held a hearing on June 27, 2014, to discuss discovery issues and establish the way for proceeding with discovery. During the hearing, the parties established dates for depositions of most, if not all, witnesses and experts, and the parties have been taking those depositions. Respecting Carpenter's request number 3, the Court has determined that Westfield need not provide further answers to Carpenter's First Set of Interrogatories and Request for Production of Documents. *See* Document No. 281, pp. 16 - 17. The Court will therefore deny Carpenter's request numbers 2 and 3 as moot.

waiving any such '[s]upplemental [o]bjection' in the 'Privilege Log' first produced December 23, 2013." (Id., p. 6.) Carpenter contends that the April 30, 2013, letter from Westfield's attorney, Mr. Kesner, to its Claim Representative, Ms. McConkey, was "generated in the ordinary course of business" and Ms. McConkey relied upon it to provide a new ground for denying coverage in her May 7, 2013, letter to Carpenter's attorney. (Id., p. 8.) Carpenter further states that mediation was scheduled on December 16, 2013, in the Board of Education's civil action in Greenbrier County, West Virginia, involving the circumstances and Carpenter informed Westfield that it was not invited to the mediation. Carpenter asserts that "Westfield failed and refused to produce and disclose all documents, and information, including all oral and written statements and any offers made by Westfield at and in connection with, and related to Westfield's uninvited attendance at the December 16, 2013, scheduled mediation in the state proceedings." (Id.) Carpenter requests that the Court require Westfield to produce such documents and information. (Id., p. 7.)

In its Memorandum in Support (Document No. 102.), Carpenter appears to contend that Westfield waived the attorney-client privilege respecting Westfield's attorney's April 30, 2013, letter to Ms. McConkey by disclosing that Westfield requested that its attorney conduct a review of its decision to deny coverage before it filed its Complaint for Declaratory Judgment in this matter on May 31, 2013. (Id., p. 2.) Carpenter reiterates that Westfield's attorney's April 30, 2013, letter to Ms. McConkey "was prepared in the ordinary course of investigating the coverage claims, and not in anticipation of future litigation." (Id., p. 3.) Carpenter cites Lendingtree v. Zillow, 2013 6385297 (W.D.N.C.) as presenting "virtually an identical issue in a discovery dispute." (Id., p. 5.) Carpenter asserts that, as in Lendingtree, Westfield has withheld Mr. Kesner's April 30, 2013, letter to Ms. McConkey containing his opinions and recommendations respecting Westfield's coverage

decision as privileged when, as Westfield is seeking the Court's declaration that Westfield's insurance did not cover Carpenter, Westfield's coverage decision is "at issue" and fairness requires that the letter be produced in the interest of the full development of the facts. Carpenter further asserts that Westfield and Ms. McConkey relied upon Mr. Kesner's letter in sending a May 7, 2013, letter to Carpenter denying coverage. Thus, Carpenter is urging that Westfield's "affirmative Complaint allegations and its Answer, defenses, denials, and rebuttals to Carpenter's counterclaim allegations" constitute an implied waiver of the attorney-client privilege respecting Mr. Kesner's April 30, 2013, letter to Ms. McConkey. (Id., p. 8.) Carpenter further cites City of Myrtle Beach v. United National Insurance Company, 739 F.Supp.2d 876 (D.S.C. 2010) as authority for the implied waiver of the attorney-client privilege when an insurer asserts defenses in its answer to bad faith allegations which require consideration of law and facts addressed in the documents which are claimed to be privileged. (Id., pp. 10 - 12.) Citing State ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. 705, 601 S.E.2d 25 (2004), State ex rel. U.S.F.&G v. Canady, 194 W.Va. 431, 460 S.E.2d 677 (1995) , and District Judge Copenhaver's decision in Continental Cas. Co. v. American Home Assur. Co., 2010 WL 692942 (S.D.W.Va.), Carpenter appears to contend that West Virginia Courts have recognized implied waiver of the attorney-client privilege upon the assertion of claims or defenses which put advice of counsel in issue. Carpenter argues that Westfield cannot establish that it did not waive the attorney-client privilege and cannot withhold the documents pertaining to Westfield's coverage decision identified in its Supplemental Objection and Privilege Log when it made Westfield's coverage decision an issue in seeking declaratory relief and asserting defenses to Carpenter's Counterclaim. (Id., 14 - 15.) Carpenter then discusses the documents identified in Westfield's Objection and Privilege Log under the work product doctrine. Carpenter contends

essentially that because Westfield was not providing Carpenter's defense in the Board's Greenbrier County action and Ms. McConkey sent her letter to Carpenter denying coverage on May 7, 2013, Mr. Kesner's April 30, 2013, letter to Ms. McConkey was not in anticipation of litigation but was in the ordinary course of Westfield's business and therefore is not work product protected. (Id., pp. 15 - 19.) Finally, Carpenter claims that because Mr. Kesner's April 30, 2013, letter to Ms. McConkey must be disclosed, Mr. Kesner is a witness respecting "evidence material to the determination of bad faith, and coverage issues, including authenticating the April 30, 2013, letter and its contents and is disqualified from further representing Westfield in this matter." (Id., pp. 19 - 20.)

In its Response (Document No. 111.), Westfield asserts that it has not raised advice of counsel as a defense or waived the attorney-client privilege as Carpenter claims. (Id., p. 6.) Westfield cites the three-factor test adopted by the West Virginia Supreme Court of Appeals in State ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. at 713 - 714, 601 S.E.2d at 33 - 34, stating that "the subject communications between Westfield and its counsel were made in connection with the underlying litigation and the coverage issues being addressed here. * * * Accordingly, the materials at issue are clearly protected by the attorney-client privilege." (Id., p. 8.) Westfield addresses Carpenter's claim of implied waiver of the attorney-client privilege stating, "Carpenter asserts that Westfield has somehow waived the attorney-client privilege by simply filing this declaratory judgment action and/or denying coverage. If that were true, no insurer could file a declaratory judgment action after receiving advice from counsel without automatically waiving the privilege with respect to that advice. Such a suggestion is simply preposterous." (Id., p. 9.) Westfield then discusses documents identified in its Objection and Privilege Log under the work product doctrine

claiming that "all of the communications at issue were prepared in connection with the underlying litigation and/or this litigation and addressed the coverage and duty to defend in the underlying action." (Id., 10.) Westfield next contends that Carpenter is not entitled to documents indicating Westfield's statements in conjunction with the mediation of the Board's State Court action because discussions in mediation are confidential under West Virginia's Trial Court Rules.[3] Finally, Westfield asserts that Carpenter's alternative requests for dismissal of Westfield's claims, exclusion of evidence and disqualification of Westfield's counsel are without merit. (Id., pp. 11 - 13.)

In it Reply (Document No. 113.), Carpenter reiterates the claims and arguments which it raised in its Second Motion to Compel sometimes by restating them *verbatim*. (Compare for example Document No. 102 at pp. 11 - 14 with Document No. 113 at pp. 10 - 14.)

By Order filed on August 13, 2014, the undersigned required Westfield to submit the documents identified in its Supplemental Objection and Privilege Log which Carpenter is requesting

---

[3] Rule 25.12 of the West Virginia Judiciary's Trial Court Rules states as follows:

Mediation shall be regarded as confidential settlement negotiations, subject to W.Va. R. Evid. 408. A mediator shall maintain and preserve the confidentiality of all mediation proceedings and records. Confidentiality as to opposing parties within a mediation session shall be maintained in a manner agreed upon by the parties and mediator. For example, all information may be kept confidential unless disclosure is specifically authorized by the party, or, all information may be shared unless specifically prohibited by the party. A mediator my not be subpoenaed or called to testify or otherwise be subject to process requiring disclosure of confidential information in any proceeding relating to or arising out of the dispute mediated.

Whether they have defended their insureds under reservation of the right to deny coverage or denied coverage altogether, insurers are not precluded from attending the mediation of claims against their insureds arising out of circumstances which occurred while their policies of insurance were in effect. Assuming that Westfield attended the mediation and the parties agreed that all statements and information would remain confidential, Westfield is entitled to withhold statements and information disclosed in the mediation.

the Court to examine *in camera* and require Westfield to disclose for *in camera* examination. (Document No. 299.) The Court has received and examined the following documents: (1) the April 30, 2013, letter from Mr. Kesner to Ms. McConkey containing Mr. Kesner's coverage opinion in view of the Board's allegations in its Greenbrier County lawsuit against Carpenter and others (Bates Page Numbers 3 - 27.); (2) an April 10, 2013, Matter Assessment/Activity Plan form considering how to proceed in view of the Board's lawsuit against Carpenter (Bates Page Number 28.); April 9 and 16, 2013, one-sentence letters from Ms. McConkey to Mr. Kesner indicating that she was sending Mr. Kesner certain documents from Westfield's files (Bates Page Numbers 1018 and 1019.); the same April 30, 2013, letter from Mr. Kesner to Ms. McConkey which is at Bates Page Numbers 3 - 27 (Bates Page Numbers 1056 - 1080.); and a July 7, 2013, letter from Ms McConkey to Mr. Kesner indicating that she was sending Mr. Kesner copies of additional documents which had been filed in the Board's Greenbrier County action and summarizing their contents (Bates Page Numbers 1112 and 1113.)

## DISCUSSION

### A.   Attorney-Client Privilege.

Federal Rule of Civil Procedure 26(b)(1) provides as follows respecting the allowable scope of discovery in a civil proceeding:

> *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(c).

The first consideration in responding to written discovery requests is therefore whether information and documents are "relevant to any party's claim or defense." Having determined that information and documents are relevant or contain relevant information, the next consideration is whether the information and documents are nonprivileged or privileged and protected from discovery.

State law applies in consideration of attorney-client privilege issues in Federal Court. Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 329 at fn. 2 (N.D.W.Va. 2006)("In a diversity case federal courts apply federal law to resolve work-product privilege claims and state law to resolve attorney-client privilege claims.")

The attorney-client privilege is often raised in discovery in first party bad faith actions as plaintiff-insureds probe their insurers' denials of coverage. The West Virginia Supreme Court of Appeals has discussed the application of the privilege in such actions in proceedings in prohibition. In doing so, the Court has stated the three factor test for asserting the attorney client privilege as follows:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential.

Montpelier U.S. Insurance Company v. Bloom, 233 W.Va. 258, 757 S.E.2d 788, 794 (2014)(*Per Curiam*); State of West Virginia ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. 705, 713 - 714, 601 S.E.2d 25, 33 - 34 (2004)(Justice Davis); State ex rel. U.S. Fidelity and Guar. Co. v. Canady, 194 W.Va. 431, 438, 460 S.E.2d 677, 684 (1995)(Justice Cleckley). Applying this standard, Justice Cleckley wrote considering a letter from the insurer's attorney to his client respecting insurance coverage dated after the insured filed a bad faith lawsuit, "[s]uch communications between an

attorney and a client are of the very type that are intended to be confidential and protected by the attorney-client privilege." State ex rel. U.S. Fidelity and Guar. Co. v. Canady, 194 W.Va. at 442 - 443, 460 S.E.2d at 688 - 689. Justice Cleckley further stated that the privilege covered the attorney's fax and email transmissions of the letter and a summary of its contents to and among his client's representatives. Id., 194 W.Va. at 443, 460 S.E.2d at 689. Respecting waiver of the attorney-client privilege, Justice Cleckley stated as follows:

> Due to the nature of this litigation, waiver may play a significant role in this discovery determination. A party may waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue. The classical example is where an attorney is sued by a client for legal malpractice. A defendant also may waive the privilege by asserting reliance on the legal advice of an attorney.

Id., 194 W.Va. at 442, 460 S.E.2d at 688 (citation omitted). Justice Cleckley then noted as follows:

> However, advice is not in issue merely because it is relevant, and it does not come in issue merely because it may have some affect on a client's state of mind. Rather, it becomes an issue where a client takes affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication.

Id., 194 W.Va. at 442 fn. 16, 460 S.E.2d at 688 fn. 16. Waiver of the attorney-client privilege does not occur automatically when an insured initiates a first-party bad faith claim. Relying upon Justice Cleckley's reasoning in Canady, Justice Davis stated as follows in State of West Virginia ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. at 714, 601 S.E.2d at 34 (citations to Canady omitted.):

> [W]hile the insured may effectuate a waiver of the privilege in the bad faith action by placing into issue the advice of his or her insurer-provided counsel in the underlying coverage litigation, the insurer may nevertheless rely upon the privilege to shield evidence from disclosure, if it can establish the satisfaction of the privilege's requisite elements.

Nor does waiver automatically occur when an insurer initiates a declaratory judgment action seeking a ruling respecting its decision to deny coverage. The insurer's reasoning in denying coverage is in

issue in such an action. Its attorney's legal opinions and conclusions respecting the insurer's coverage decision are not. In <u>Montpelier U.S. Insurance Company v. Bloom</u>, 233 W.Va. 258, 757 S.E.2d 788, 797 (2014), the West Virginia Supreme Court of Appeals held that the insurer's national coverage counsel's coverage opinion letters to the insurer were attorney-client privileged.

Thus, it appears that the West Virginia Supreme Court of Appeals has recognized that an implied waiver of the attorney-client privilege occurs only when an insurer places the decisions and conclusions of its attorney in issue.

The three requisite elements for application of the attorney-client privilege are clearly present respecting all of the subject documents referenced in Westfield's Supplemental Objection and Privilege Log except the April 10, 2013, Matter Assessment/Activity Plan form (Bates Page Number 28.) which appears to be Westfield's work product. Indeed, Carpenter implicitly acknowledges the application of the attorney-client privilege to the documents by claiming that Westfield waived it. But then Carpenter argues inconsistently that the documents, particularly Mr. Kesner's April 30, 2013, letter to Westfield, should be disclosed because they were prepared in the ordinary course of Westfield's business insinuating that Mr. Kesner acted in some other capacity than Westfield's legal advisor. Nothing in the record supports this latter contention. Rather, it is evident that Westfield concluded initially and upon reassessment without any input from Mr. Kesner or any other outside counsel that potential claims arising out of Carpenter's work at the site of the construction of the Lewisburg Elementary School were not covered under the terms and conditions of its policies of insurance. The record reflects that Westfield advised Carpenter of its conclusion in writing on or about March 30, 2012 (Document No. 112 - 6.) and again on or about April 24, 2012 (See Document No. 280, p. 7, "Work product note" 66.). In February, 2013, the Board initiated

its lawsuit in the Circuit Court of Greenbrier County against Carpenter and the other contractors asserting Carpenter's breach of contract. Having learned of the Board's claims, Westfield considered whether they fell within its coverage and sent Carpenter a letter on or about February 22, 2013, indicating that they did not. On or about April 5, 2013, Carpenter's attorney called Westfield requesting that Westfield provide coverage and Carpenter's defense in the Board's Greenbrier County lawsuit. It is evident that Westfield, having received Carpenter's attorney's phone call, retained Mr. Kesner to conduct a coverage assessment. On or about April 9, 2013, Westfield sent Carpenter's attorney a letter indicating that its attorney was conducting a coverage review. Westfield's attorney, Mr. Kesner, sent Westfield the subject letter dated April 30, 2013, indicating his conclusions respecting coverage and his recommendations respecting how to proceed. Westfield sent Carpenter a further coverage denial letter in early May, 2013. Westfield filed its Complaint for Declaratory Relief in this matter on May 31, 2013. It is clear that Westfield retained Mr. Kesner as an attorney to conduct an independent assessment of its coverage denial decision and recommend a way of proceeding under the circumstances as they existed in April, 2013, intending an attorney-client relationship in which communications would be confidential. See Montpelier U.S. Insurance Company v. Bloom, 233  W.Va. 258, 757 S.E.2d at 794 - 795 (2014). But did Westfield waive the privilege? Westfield has not alleged reliance upon advice of counsel as a defense and it has not placed the decisions and conclusions of Mr. Kesner conspicuously in issue in any other way. Carpenter claims, however, that Westfield waived the privilege by including some of what Mr. Kesner wrote in his April 30 letter to Westfield in its May 7, 2013, coverage denial letter. Even if Westfield did so, it did not waive the application of the privilege to the April 30, 2013, letter. The mere fact that an insurer relies upon the opinion of its attorney in denying coverage does not waive

13

the privilege. As District Judge Urbanski reasoned in <u>Botkin v. Donegal Mut. Ins. Co.</u>, 2011 WL 2447939 at * 6 (W.D.Va., "[t]here would be little point in retaining coverage counsel to issue an opinion if a party did not intend to rely on it. Likewise, if reliance always gave rise to waiver in this circumstance, no one would seek coverage counsel's advice." The privilege is therefore not waived absent an insurer's affirmative steps to rely upon advice of counsel for proof of its claim or defense. <u>Id.</u>, at * 7. Westfield did not waive application of the attorney-client privilege to the subject documents and therefore properly withheld them as privileged communications.

###  B.     <u>Work Product Doctrine.</u>

Federal law applies in consideration of work product issues in Federal Courts. <u>Nicholas v. Bituminous Cas. Corp.</u>, <u>supra</u>. Rule 26(b)(3)(A) provides as follows respecting work product materials:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But subject to Rule 26(b)(4), those materials may be discovered if:
> (i)     they are otherwise discoverable under Rule 26(b)(1); and
> (ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The work product doctrine as incorporated in the Federal Rules now at Rule 26(b)(3)(A) protects from discovery documents which are prepared in anticipation of litigation. The 1970 amendments of the Rule made it clear that "mental impressions and subjective evaluations of investigators and claim-agents" in anticipation of litigation are protected as work product. <u>See</u> Advisory Committee Notes, 1970 Amendments to Rule 26(b)(3). The burden of proving the applicability of the work product doctrine rests with the party asserting it. Once proven, the burden

shifts to the contesting party to prove substantial need for and inability to obtain the substantial equivalent of the materials by any other means. See the undersigned's writing in Chambers v. Allstate Ins. Co., 206 F.R.D. 579, 584 - 585 (S.D.W.Va. 2003). "Invoking reliance upon the advice of counsel defense constitutes a waiver of the work product doctrine." Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 333 (N.D.W.Va. 2006).

All of the subject documents referenced in Westfield's Supplemental Objection and Privilege Log are attorney-client privileged communications between Westfield and Mr. Kesner except the April 10, 2013, Matter Assessment/Activity Plan form (Bates Page Number 28.). This document was obviously prepared after Carpenter's attorney called Westfield demanding that Westfield provide coverage and Carpenter's defense in the Board's Greenbrier County lawsuit. It contains the mental impressions and subjective evaluations of Westfield's agent respecting matters related to the Board's pending lawsuit and anticipated litigation with Carpenter. Indeed, Westfield filed its Complaint for Declaratory Judgment a little more than six weeks later. Westfield therefore properly withheld the document as work product.

### C. Disqualification.

The Fourth Circuit has written that "[i]n determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances with 'hair-splitting nicety, but, in the proper exercising of its supervising power over the members of the bar and with the view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." United States v. Clarkson, 567 F.2d 270, 273 at fn. 3 (4th Cir. 1977.) An alleged conflict must, however, be real and not hypothetical, fanciful or a matter of mere speculation. Sanford v. Commonwealth of Virginia, 687 F.2d 591, 602 - 603 (E.D.Va. 2009). "[T]he party seeking

disqualification has a high standard of proof to show that disqualification is warranted." Id., at 602.

Having determined that Westfield properly withheld Mr. Kesner's April 30, 2013, letter and the other documents identified in Westfield's Supplemental Objection and Privilege Log, the Court finds nothing even remotely indicating any conflict of interest or ethical breach connoting an appearance of impropriety which would require Mr. Kesner's disqualification. The Court will therefore deny Carpenter's Motion to Disqualify.

It is therefore hereby **ORDERED** that Carpenter's Motion to Compel Westfield to Designate Representative(s) to Testify, and Produce Responsive Documents in Response to Carpenter's Rule 30(b)(6) Notice of Deposition and Rule 34 Duces Tecum is **DENIED as moot** and Carpenter's Second Motion to Compel Westfield to Provide Full, Complete and Meaningful Discovery Responses, and in the Alternative Second Motion to Strike, and *in Limine* to Exclude Westfield's Evidence and Carpenter's Motion to Disqualify Westfield's Counsel is **GRANTED** only insofar as Carpenter requests that the Court examine the subject documents *in camera*; otherwise, it is **DENIED**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

Enter: August 21, 2014.

R. Clarke VanDervort
United States Magistrate Judge

16