**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

WESTFIELD INSURANCE COMPANY,

        Plaintiff,

v.                            CIVIL ACTION NO.   5:13-cv-12818

CARPENTER RECLAMATION, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Westfield Insurance Company's Motion for Summary Judgment on Insurance Coverage Issues* (Document 106)[1] and *Memorandum in Support* (Document 107), as well as *Carpenter Reclamation, Inc.'s Response in Opposition to Westfield's Motion for Summary Judgment on Insurance Coverage Issues, and in Further Support of Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage, and for Partial, or Summary Judgment on Liability and Damages* (Document 112),[2] and *Westfield*

---

1       Westfield attaches the following as exhibits to its *Motion for Summary Judgment on Insurance Coverage Issues* (Document 106): (1) an undated seven page copy of the BOE's Petition for Declaratory Relief and Award(s) and Judgment for Breach of Contract (Exhibit A, Document 106-1); (2) a twenty-nine page copy of the Amended Petition/Complaint of Plaintiff Pursuant to Order Entered October 29, 2013, dated November 7, 2013 (Exhibit B, Document 106-2); (3) an undated one hundred fifty-nine (159) page copy of Commercial General Liability Policy No. TRA 4593575 issued by Westfield with effective date of 12/01-10/12/01-11 (Exhibit C, Document 106-3); (4) an undated sixteen page copy of "Relevant portions of the subject Westfield Policy;" (Exhibit D, Document 106-4); and (5) an undated twelve page copy of the Defendant Board of Education of Greenbrier County, West Virginia's Rule 26(a)(2) Disclosures (Exhibit E, Document 106-5).

2       Carpenter attaches the following as exhibits to its *Response in Opposition to Westfield's Motion for Summary Judgment on Insurance Coverage Issues, and in Further Support of Carpenter Reclamation, Inc.'s Motion for Partial, or Summary Judgment on Insurance Coverage, and for Partial, or Summary Judgment on Liability and Damages* (Document 112): (Supplemental 4A) a nine page copy of Excerpted Relevant Parts of Exhibit 4, undated (Supplemental Exhibit 4A, Document 112-1); (Supplemental 4B) a twenty-four page copy of excerpted portions of Westfield Policy No. TRA 4593575, undated (Supplemental Exhibit 4B, Document 112-2); (Supplemental 4C) a six

*Insurance Company's Reply to Carpenter Reclamation, Inc.'s Response in Opposition to Westfield's Motion for Summary Judgment on Insurance Coverage Issues and in Further Support of Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage and for Partial or Summary Judgment on Liability and Damages* (Document 120).[3] The Court has also reviewed *Carpenter Reclamation's Motion for Partial or Summary Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and Damages* (Document 108)[4] and *Memorandum in Support* (Document 109), as well as *Westfield Insurance Company's*

---

page copy of excerpted portions of Westfield Policy No. TRA 4593575, undated (Supplemental Exhibit 4C, Document 112-3); (Supplemental 4D) a twenty-one page copy of Westfield's Commercial Umbrella Policy TRA 4593575, undated (Supplemental Exhibit 4D, Document 112-4); (13) a one page letter copy from Swope Construction to E.T. Boggess, Architects, Inc., dated April 26, 2011 (Exhibit 13, Document 112-5); (14) an eight page copy of a letter from Judy McConkey to Carpenter, dated March 30, 2012 (Exhibit 14, Document 112-6); (15) a two page copy of a letter from John W. James of Terradon to Todd Boggess, E.T. Boggess Architects, Inc., dated July 13, 2011 (Exhibit 15, Document 112-7); (16) no document attached (Exhibit 16, Document 112-8); (16.A) a one page copy of a letter from Brian W. Smith, Dougherty Company, Inc., to Chris Canterbury, E.T. Boggess Architects, Inc., dated May 9, 2011 (Exhibit 16A, Document 112-9); (16.B) a one page copy of an email from Brian Smith to Chris Canterbury, dated June 2, 2011 (Exhibit 16B, Document 112-10); (16.C) a one page copy of Meeting Minutes re: Lewisburg Elementary School, dated July 26, 2011 (Exhibit 16.C, Document 112-11); (16.D) one page copy of random notes from unknown origin, undated (Exhibit 16.D, Document 112-12); (16.E) a one page copy of random notes from unknown origin, undated (Exhibit 16.E, Document 112-13); (16.F) an eight page copy of work product notes on Carpenter file, dated July 15, 2013 (Exhibit 16.F, Document 112-14); (16.G) a one page copy of a letter from Judy McConkey to Carpenter Reclamation, dated October 24, 2011 (Exhibit 16.G, Document 112-15); (16.H) a one page copy of a letter from Judy McConkey to Carpenter, dated December 7, 2011 (Exhibit 16.H, Document 112-16); (16.I) a two page letter from Judge McConkey to counsel for Carpenter, dated April 8, 2013 (Exhibit 16.I, Document 112-17); (17) a nine page copy of a report by Tammy St. Clair, dated December 2, 2013 (Exhibit 17, Document 112-18); (18) a eleven page copy of the Project Manual for the Lewisburg Elementary School Early Site Package, dated November 20, 2009 (Exhibit 18, Document 112-19); (19) a three page copy of topography and site plan of the LES, undated (Exhibit 19, Document 112-20); and (20) a seventeen page copy of a 2013 Hawaii case, Group Builders, Inc. v. Admiral Insurance Company, (No. 29729), dated April 15, 2013 (Appendix 1, Document 112-21).

3       Westfield attaches the following as an exhibit to its *Reply to Carpenter Reclamation, Inc.'s Response in Opposition to Westfield's Motion for Summary Judgment on Insurance Coverage Issues and in Further Support of Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage and for Partial or Summary Judgment on Liability and Damages* (Document 120): (1) A eight page copy of a Tammy L. St. Clair's report, dated December 2, 2013 (Exhibit A, Document 120-1).

4       Carpenter attaches the following as exhibits to its *Motion for Partial Summary Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and Damages* (Document 108): (1) a twenty-seven page copy of Westfield Insurance Company's Complaint for Declaratory Relief, undated (Exhibit 1, Document 108-1); (2) an eight page copy of the BOE's Petition for Declaratory Relief and Award(s) and Judgment For Breach of Contract, undated (Exhibit 2, Document 108-2); (3) a thirty-four page copy of the Amended Petition/Complaint of Plaintiff Pursuant to Order Entered October 29, 2013, undated (Exhibit 3, Document 108-3); (4.1) a ninety-seven (97) page copy of a letter from Judy McConkey enclosing a certified copy of Westfield Commercial General Liability Policy No. TRA 4593575, undated (Exhibit 4, Document 108-4); (4.2) a ninety-nine (99) page copy continuation of

*Response to Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage and for Partial Summary Judgment on Liability and Damages* (Document 114)[5] and *Carpenter Reclamation, Inc.'s Reply to Westfield's Response in Opposition to Carpenter's Motion for Summary Judgment on Insurance Coverage Issues and for Partial Summary Judgment on Liability and Damages, and in Further Support of Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage, and for Partial or Summary Judgment on Liability and Damages* (Document 121). For the reasons stated more fully herein, the Court finds that Westfield Insurance Company's motion should be granted and Carpenter Reclamation, Inc.'s motions should be denied.

## I.        FACTUAL AND PROCEDURAL HISTORY

This declaratory judgment action arises out of an underlying state court declaratory judgment and breach of contract action filed by the Board of Education of Greenbrier County,

---

Westfield Policy No. TRA 4593575, undated (Document 108-5); (4.3) a one hundred thirty-six (136) page copy continuation of Westfield Policy No. TRA 4593575, undated (Document 108-6); (4.4) a one hundred forty-six (146) page copy continuation of Westfield Policy No. TRA 4593575, undated (Document 108-9); (5) an eight page copy of a letter from Judy McConkey to Carpenter Reclamation, Inc., dated February 22, 2013 (Exhibit 5, Document 108-8); (6) a two page letter from counsel for Carpenter to Judy McConkey, dated March 28, 2013 (Exhibit 6, Document 108-9); (7) a twenty-three (23) page copy of a letter from Judy McConkey to Carpenter Reclamation and its counsel, dated May 7, 2013 (Exhibit 7, Document 108-10); (8) a two page copy of the Affidavit of Kelly Carpenter, dated January 30, 2014 (Exhibit 8, Document 108-11); (9) an eleven page copy of a Settlement Agreement, before Charles Piccirillo, dated December 16, 2014 (Exhibit 9, Document 108-12); (9.A) a two page copy of a letter from counsel for Carpenter to counsel for Westfield, dated December 13, 2013 (Exhibit 9A, Document 108-13); (10) a sixty-six page (66) copy of Notice of Attorney Fees & Costs Incurred, various dates from May 4, 2011 to December 13, 2013 (Exhibit 10, Document 108-140); (11) a fifty-one page copy of Carpenter's Answer, dated June 19, 2013 (Exhibit 11, Document 108-15; also Document 12); (12) a eleven page copy of the Answer of Westfield Insurance Company to Carpenter Reclamation, Inc.'s Counterclaim for Money Damages and Declaratory Relief, dated July 7, 2013 (Exhibit 12, Document 108-16; also Document 14).

5        Westfield attaches the following as exhibits to its *Response to Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage and for Partial Summary Judgment on Liability and Damages* (Document 114): (1) an undated seven page copy of the BOE's Petition for Declaratory Relief and Award(s) and Judgment for Breach of Contract (Exhibit A, Document 114-1 at 1-7); and (2) a twenty-nine page copy of the Amended Petition/Complaint of Plaintiff Pursuant to Order Entered October 29, 2013, dated November 7, 2013 (Exhibit B, Document 1114-1 at 8-36.)

West Virginia, (BOE) against Carpenter and other contractors.   Specifically, the current dispute concerns whether the Plaintiff Insurer, Westfield, had a duty to defend or indemnify the Defendant Insured, Carpenter, in that state court proceeding.

Defendant Carpenter is a West Virginia corporation with Sissonville, West Virginia, as its principal place of business, while Plaintiff Westfield is an Ohio corporation with its principal place of business in Westfield Center, Ohio.   (See *Compl.*, Document 1 at 1-2; Document 108 at 1-2.) The transaction giving rise to this matter occurred in Greenbrier County, West Virginia. (Document 1 at 1.)   Carpenter was retained to provide services in the construction of the Lewisburg Elementary School (LES) in Greenbrier County, West Virginia, for the Greenbrier BOE. (*See* Documents 106-1 at 1 & 106-2 at 1-2.)   Specifically, Carpenter's job was to "prep the [LES] site in a preliminary manner so that the building site, the building pad site, and other areas of the site were at a consistent bearing capacity so that the general contractor could come in and excavate down further to a level of the building footing pad."   (Exhibit G, Document 295 at 42.)

A.  *State Action*

"On or about January 3, 2011, Petitioner [BOE] entered into a Construction Contract with Swope for the construction of Lewisburg Elementary School …"   (Document 1 at 2; Exhibit A, Document 106-1 at 2.)   On that same date, the BOE also entered into a "Base Bid Plumbing Construction Contract with Dougherty for plumbing service and equipment" for the same LES construction project.   (*Id.*)   Before entering into the contracts with Swope and Daugherty, however, on or about February 15, 2010, the BOE entered into an early site work package with Defendant Carpenter for the Lewisburg Elementary School.   (*Id.* at 2-3.)   Carpenter's contract required it to provide "site clearing and demolition, top soil stripping and stockpiling, earth work,

4

rock excavation and reduction of particle size, excavation, compacted fill, remediation/back fill of existing site sink holes, erosion and settlement control, site storm drainage, establishment of sub-grade for future building," as well as other tasks.   (*Id.* at 3.)   The BOE's Amended Petition averred that:

> The Contract [between the BOE and Carpenter] included, among other documents herein before mentioned: (i) the agreement executed February 15, 2010, by and between [BOE] and Carpenter; (ii) the performance bond executed by Western Surety Company (Exhibit 4); (iii) general conditions of the Construction Contract ("the general conditions"); (iv) all bid documents (including all pre-bid documents and requirements of bidders); (v) the supplementary conditions of A1A Document A101 and A201; (vi) the general conditions of the Contract for Construction required by the State of West Virginia; (vii) supplementary conditions; (viii) specifications, plans and drawings of the Lewisburg Elementary Early Site Package which included Division 00, Division 33 and Division 31 (which included site clearing, earth moving and erosion and sediment control); and (ix) including the geotechnical data and subsurface investigation as Appendices thereto. The Contract is so voluminous as it would not be feasible to attach it hereto but is incorporated herein in its entirety.

(Document 106-2 at 5.)

Importantly, this early site work contract between the BOE and Carpenter also "required the site to be over excavated to an elevation of 2,188.83 feet which is 3.5 feet below the floor subgrade and slightly below the foundation of the subgrade" of the future LES. (Document 106-1 at 3-4.)   Carpenter was required to excavate the extra 3.5 feet below in order for plumbing and other needed utilities to be installed.   (*See* Document 106-2 at 12, 14, 19; Document 302 at 4, fn 2.)   The contract between the BOE and Carpenter also referenced the Project Manual for the Lewisburg Elementary School Early Site Package, which the BOE's Petition incorporated, and stated that Carpenter was required "to over excavate the building pad to the limits indicated from

5

the drawings to a depth of 3.5 feet below finish floor subgrade. (2,192.33). This backfill shall be comprised of <u>Class A Fill</u>."   (Document 106-2 at 14) (emphasis in original.)   The BOE's Amended Petition alleged that Section 3.10 of the LES Early Site Package mandated that Carpenter:

> 3.10 Unauthorized excavation:
>
> > A.   <u>Fill unauthorized excavation under</u> foundations or wall footings by extending bottom elevation of concrete foundation or footing to excavation bottom, without altering top elevation. Clean concrete fill, with 28-day compressive strength of 1000 PSR may be used with approved by architect.
> >
> > > 1.   Fill <u>un</u>authorized excavations under other construction, pipe or conduit as directed by Architect.

(Document 106-2 at 15.)   Furthermore, the Petition alleged that pertinent portions of Section 3.15 dictated:

> 3.15 – Compaction of soil backfills and fills:
>
> > A.  Class A Backfill; this fill is comprised of top 4 foot of fill across the site.
> >
> > B.  Class B Backfill; this fill is comprised of all fill minus 4 feet of finish grade.
> >
> > C.  This backfill and fill soil materials in layers not more than 9 inches in loose depth (4 inch particle size) for material compacted by heavy compaction equipment and not more than 4 inches in loose depth for material compacted tampers for Class A and not more than 2 foot layers for Class B . . .
> >
> > > 1.  See 2.1.B – says not larger than 2" in size

(*Id.*)   This LES Early Site Package also specified what types of soil were satisfactory soils and which were unsatisfactory soils in Section 2.1 – Soil Materials.   (*Id.* at 13.)

Swope allegedly uncovered violations committed by Carpenter in 2011 as it was preparing to begin foundation work.   (Document 106-2 at 20.)   Specifically, Swope complained to the BOE that Carpenter, "in its site work, blasted to depths deeper than that required by the project specifications with excess depth blasting up to nine feet."   (*Id.*)[6]   The project Architect, E.T. Boggess Architects, then "engaged Terradon Corporation to perform an independent analysis which Swope contends supports it[s] findings of non-conformance of performance by Carpenter . . ."   (*Id.*)   Carpenter received a Notice of Non-Conforming Work on March 17, 2011, from E.T. Boggess Architects, Inc.   (*Id.* at 21; Document 1 at 3; Document 295-1 at 9, Exhibit B.) This notice listed the following under Section 7, entitled "Non-Conforming Work Reported This Date (but not limited to):"

> 7.1 Site Exploration—Revealed particle size of material below surface in Building Pad "A", "B", "C" and "D" to be uncontrolled fill larger than the Class A fill size per the specification. The specifications state that the particle size to be 4" or less, in these particular site explorations materials were in the 20:-28" particle sizes.

(Document 295-1 at 12.)   That same notice also stated, under "Section 10. Comments / Notes," that there was a "need to further investigate the non-conforming work of Carpenter Reclamation with the Construction Documents."   (*Id.*)

The BOE alleged that Carpenter never remedied the non-conforming work, but Carpenter claims it remediated all of the deficiencies.   (*Id.*; Document 1 at 3-4.)   The BOE also alleged that it "was required to spend money for evaluations of non-conforming work and reviews and testing

---

6       It was also alleged by Swope and/or Dougherty that Carpenter installed "a liner that was found by those inspecting its work to be defective and the replacement cost thereof [wa]s $14,100."   (*Id.* at 22; Document 1 at 4.)

of Carpenter's work sites and its alleged non-conforming work and alleged failures."   (Document 106-2 at 20.)[7]

Further, the BOE, through its Amended Petition:

> recognized that a controversy existed between Swope and Dougherty on one hand and Carpenter on the other and sought Declaration of this Court as to which parties, between the three (3), and to what extent payment should be made and what portion of the retainage held pursuant to the Contract of Carpenter should be applied to the payments, if any, made to Swope and/or Dougherty and for such other direction as the Court may provide.

(*Id.* at 106-24.)

Carpenter received payment, pursuant to its contract, of $1,125,260, but did not receive retainage in the amount of $72,740.   (Document 106-2 at 21-22.)   Carpenter then demanded an additional $87,138 from the BOE.   (Document 1 at 4.)   Before the BOE filed its Petition, pursuant to its contractual powers, E.T. Boggess Architects provided a "Change Order approval for the work performed by Dougherty and Swope as claimed for corrective work necessary to correct the defective performance by Carpenter on September 11, 2012, signifying approval for the Change Order of Dougherty in the amount of $10,587 and on behalf of Swope of $193,989.14." (Document 106-2 at 22-23.)

In the underlying state court action, the BOE sought a declaration as to whether:

> (1) the BOE could accept or reject the claims of Swope, Dougherty and Carpenter for payment caused by the [alleged] non-conforming work of Carpenter;

> (2) the BOE could apply the retainage under the contract with Carpenter to pay in part or reimburse others for the remediation performed to cure the [alleged] non-conforming work of Carpenter, and;

---

[7]      The Court notes that the BOE's Amended Petition also alleged disputes between Carpenter, Swope and Dougherty with respect to the work that each was contracted to do.

(3) the BOE could have an allowance/compensation as against Carpenter and Western Surety for any amounts the BOE was required to pay Swope and/or Dougherty for payment caused by the [alleged] non-conforming work of Carpenter.

(Document 44 at 2.) [8]   Also in that state court case, Carpenter filed counterclaims against the BOE for: (1) breach of contract/unjust enrichment; (2) fraud, deceit, misrepresentation, negligent and intentional; (3) violation of West Virginia's Prompt Payment Act; (4) declaratory relief; and (5) negligence and breach of warranty of adequacy.[9] [10]   (*Id.* at 3.)

Before construction of the LES, Carpenter acquired a Commercial General Liability (CGL Policy) with Westfield.[11]   The pertinent CGL Policy was designed for Carpenter by Mountain State Insurance Agency, Inc., through Westfield, and had effective dates of coverage of December 1, 2010, through December 1, 2011.   (*See* Exhibit C, Document 106-3 at 1-2.)   Said policy dictates that Westfield will "pay those sums that [Carpenter] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies."   (*Id.* at 28.)   Conversely, Westfield "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury or 'property damage' to which this insurance does not apply."   (*Id.*) It stipulates that coverage only applies if "the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory;" and occurs during the coverage period. (*Id.*)   The CGL Policy defines bodily injury as "bodily injury, sickness or disease sustained by a

---

8       Swope and Dougherty were dismissed from the state court action by Order of August 15, 2013.
9       Defendant Carpenter filed cross-claims against Swope and Dougherty alleging (1) indemnity and contribution; (2) civil conspiracy/tortious interference/defamation/declaratory relief.
10      Defendant Carpenter also filed Third-Party Claims against MBAJ Architecture; Moment Engineers; Terradon Corporation; E.T. Boggess Architect, Inc.; Geological Technologies, Inc.; and ZDS LLC. (Cite-Exhibit A) The following causes of action were alleged against the Third-Party Defendants: (1) design professional negligence and breach of warranty of adequacy; (2) breach of implied warranty by design professionals; (3) breach of contract against GTI; (4) negligence by GTI; and (5) indemnity and contribution.   (*See* Exhibit A, Document 106-1; Exhibit B, Document 106-2.)
11      The applicable CGL Policy was Policy No. TRA-4593575. (*See* Document 1 at 5.)

person, including death resulting from any of these at any time," and also defines property damage as "physical injury to tangible property, including all resulting loss of use of that property . . . [and] loss of use of tangible property that is not physically injured."  (*Id.* at 40, 42.)  Occurrence "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* at 42.)

Westfield tendered multiple letters to Carpenter in relation to the state court action, most of which stated that the BOE's accusations did not trigger coverage under the applicable policy because there was no property damage and no occurrence.[12]  Specifically, on October 24, 2011, and December 7, 2011, Westfield sent two identical letters to Carpenter Reclamation, both stating that "[t]he claim for the excavating issues arising from the [LES] project remains open.  To date we have not been contacted by the school board seeking any liability claims.  If you are aware of any specific claim, please advise."  (Documents 112-15 & 112-16 at 1.)

Westfield's March 30, 2012 letter to Carpenter stated that the allegations were that Carpenter's "site-work was over excavated and may result in additional cost for backfill and/or remediation of the over-blasting," but noted, again, that "no claim or lawsuit has been presented by either party."  (Document 112-6 at 2.)  The letter also listed certain provisions of the CGL Policy, and stated that certain exclusions made Westfield unable "to provide coverage for the loss as known to date . . ."  (*Id.* at 8.)  A subsequent letter dated February 22, 2013, made clear that Westfield had "received the Petition for Declaratory Relief filed against [Carpenter]," and stated

---

12      The Court notes that the first correspondence in regard to the BOE dispute between Carpenter, Westfield, and its claims adjustor, Judy McConkey, was an October 11, 2011 email, where Ms. McConkey stated to Randy Carpenter of Carpenter Reclamation that, "[w]hile we probably don't have coverage for this claim but won't know for sure until we investigate and learn more (and someone actually presents a claim) we want to go ahead and have an expert inspect the project."  (Document 295-2 at 12.)  She also stated that she needed to meet with him and "obtain the documents you have related to this project-contracts/bid, daily work logs, etc."  (*Id.*)

10

that "[t]he allegations of this petition center on the alleged over-blasting and the cost of remediating the same and breach of contract issues."   (Document 108-8 at 2.)   The letter declared that, "[a]s the allegations regarding breach of contract cited in the petition do not qualify as an 'occurrence' under your policy, the Insuring agreement of your policy is not triggered."   (Id. at 8.) Like the letter of March 30, 2012, this letter indicated that certain exclusions also prevented coverage.   (*Id.*)

On March 23, 2013, Carpenter filed a "Notice of Claim/Tender of Defense and Demand for Insurance Coverage under the pertinent insurance policy" with Westfield, in which it expressed its expectation "to be covered under its applicable insuring agreement."   (*See* Document 108-9.)   By letter dated April 8, 2013, Westfield responded to this notice and acknowledged receipt of a telephone call of March 28, 2013, in which Carpenter's counsel apparently advised Westfield of his representation. (*See* Document 112-17.)   This letter also acknowledged: (1) Carpenter's disagreement with Westfield's determination that the policy was not triggered, and (2) its demand for defense and indemnification.   The letter confirmed the denial of coverage for the alleged loss, and noted that the matter would be forwarded to "coverage counsel" who would give the matter additional review, after which Westfield would further respond to Carpenter's tender for defense and indemnification.   (*Id.* at 2.)

Westfield issued another letter to Carpenter on May 7, 2013, that further delineated its position with respect to coverage.   (*See* Document 108-10.)   It provided a factual background of the dispute, outlined relevant provisions of the applicable policy, and concluded with a "Policy Coverage Analysis." This Analysis indicated that "the BOE appears to assert no claim for 'property damage'... as there is no allegation of physical injury to tangible property, nor does the

BOE assert that it lost the use of any property due to an 'occurrence.'"   (*Id.* at 21.)   Westfield

declared that even if the BOE asserted a claim for property damage arising out of an occurrence,

there were certain exclusions in the CGL Policy and CGL Umbrella coverage that precluded

coverage.   (*Id.* at 22-23.)   It stated that "[t]his letter is not intended to represent a waiver of any of

the terms or conditions of the Westfield policy, however, all of which are expressly preserved."

(*Id.* at 23.)   As a result of the denial letters, Carpenter defended itself in the state court matter.

That state court action has now been settled.

### B. Federal Action

On May 31, 2013, Westfield filed a *Complaint for Declaratory Relief* (Document 1) in the

United States District Court for the Southern District of West Virginia, naming Carpenter and the

BOE as Defendants.   Westfield asserts that the BOE did not "present a claim for 'property

damage' or 'bodily injury' as defined by the CGL Policy, but rather, "the BOE asserts that

Carpenter failed to complete its work according to the specifications of Carpenter's contract with

the BOE, which required other contractors to remediate/repair Carpenter's allegedly deficient

work."   (Document 1 at 22.)   Further, it alleged that "the BOE does not assert a claim for loss or

damage arising from an 'occurrence,' defined by the Policy as an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."[13]   (*Id.*)   Westfield

claims that "the BOE has asserted a claim for breach of contract against Carpenter, and seeks

consequential damages arising from the alleged breach."   (*Id.*)

Additionally, Westfield alleges that even if coverage were "'triggered' by the claims of the

BOE, the Policy contains relevant exclusions which are applicable and exclude coverage for the

---

[13]     Westfield also claims that the Commercial Umbrella Coverage under the CGL Policy is not available to
Carpenter for identical reasons. (Document 1 at 24.)

BOE's claims," including exclusions for "contractual liability," "impaired property," and "'property' damage to that particular part of any property that must be restored, repaired or replaced because the work of Carpenter was incorrectly performed on it."     (Document 1 at 23.)

Westfield seeks the following declarations:

> (1) That the Westfield Policy does not provide coverage for the defense or indemnification of Carpenter for those claims asserted by the BOE arising from the early site work package with Carpenter for the new elementary school, which project work allegedly included but was not limited to site clearing and demolition, stock piling, top soil stripping, earth work, rock excavation and reduction of particle size, excavation, compacted fill, remediation/back fill of existing site sink holes, erosion and sediment control, site storm drainage, establishment of sub-grade for future building and roadways and parking, establishment of finished grade for physical education play fields, spreading of top soil on specified portions of the site, and mulching of specified portions of the site;

> (2) That Westfield has no duty to defend or indemnify Carpenter against those claims asserted by the BOE arising from the early site work package with Carpenter for the new elementary school, which project work allegedly included but was not limited to site clearing and demolition, stock piling, top soil stripping, earth work, rock excavation and reduction of particle size, excavation, compacted fill, remediation/back fill of existing site sink holes, erosion and sediment control, site storm drainage, establishment of sub-grade for future building and roadways and parking, establishment of finished grade for physical education play fields, spreading of top soil on specified portions of the site, and mulching of specified portions of the site; and

> (3) That Westfield is entitled to such further and additional relief as the Court deems just and proper.

(Document 1 at 24-25.)   Westfield also demanded "a trial by jury as to all factual issues, if any."

(*Id.* at 25.) (emphasis omitted.)

13

On June 14, 2014, the BOE filed a *Motion and Supporting Memorandum in Support of Motion to Dismiss* (Document 10), and Carpenter filed its *Answer to Westfield Insurance Company's Complaint for Declaratory Relief* and *Counterclaim for Money Damages and Declaratory Relief* (Document 12) on June 19, 2013.   Carpenter filed counterclaims against Westfield for breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, bad faith, and punitive damages, while it filed cross-claims against the BOE for breach of contract/unjust enrichment (Count I), fraud, deceit, and negligent and intentional misrepresentation (Count II), prompt payment act violation (Count III), declaratory relief (Count IV), and negligence and breach of warranty of adequacy (Count V).   (*See* Document 12.)   After briefing, on September 25, 2013, the Court issued a *Memorandum Opinion and Order* (Document 42) denying the BOE's motion to dismiss.   Both Westfield and Carpenter then consented to the dismissal of BOE from the instant federal matter as evidenced by this Court's April 15, 2014 *Order* (Document 164).[14]

All that remains is for the Court to determine whether Westfield had a duty or obligation to defend and/or indemnify Carpenter in the state court case.   This determination hinges on whether Carpenter's acts or omissions caused property damage resulting from "an 'occurrence' under a policy of commercial general (CGL) insurance."   *Cherrington v. Erie Ins. Property and Cas. Co.*, 745 S.E.2d 508, 521 (W. Va. 2013).

As previously stated, Westfield filed its *Motion for Summary Judgment* and *Memorandum in Support* on January 30, 2014, Carpenter filed its *Response* on February 12, 2014, and Westfield filed its *Reply* on February 19, 2014.   Carpenter filed its *Motion for Summary Judgment* and

---

[14]     The Court notes that the dismissal of BOE also resulted in the dismissal of both Westfield's direct claims and Carpenter's cross-claims against the BOE.

*Memorandum in Support* on January 30, 2014, also.   Thereafter, Westfield filed its *Response* on

February 13, 2014, and Carpenter filed its *Reply* on February 20, 2014.

An extensive and contentious discovery dispute erupted between the parties that

effectively stalled the discovery process.   After several discovery related motions and filings, the

Magistrate Judge resolved the issues raised therein.   (*See* Documents 21, 31, 33, 53, 56, 73, 88,

101, 147-151, 157-158, 166, 185, 194, 222-223, 225, 229, 242, 247-248, 252, 257, 268-269,

280-281, 286-292, 298-300, 303-304, & 306.)   As a result, after conducting multiple depositions

and proceeding in discovery, the parties filed supplemental motions, briefings, and exhibits

relative to summary judgment.

On August 5, 2014, Westfield filed its *Supplemental Memorandum in Support of*

*Westfield's Motion for Summary Judgment on Insurance Coverage Issues and in Opposition to*

*Carpenter Reclamation Inc.'s Request for Partial Summary Judgment on Liability and Damages*

(Document 295).[15]   On that same day, Carpenter filed both a *Supplemental Motion for Partial or*

*Summary Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and*

---

15      Westfield attaches the following as exhibits to its *Supplemental Memorandum in Support of Westfield's*
*Motion for Summary Judgment on Insurance Coverage Issues and in Opposition to Carpenter Reclamation Inc.'s*
*Request for Partial Summary Judgment on Liability and Damages* (Document 295): (1) an undated eight page copy of
the BOE's Petition for Declaratory Relief and Award(s) and Judgment for Breach of Contract (Exhibit A, Document
295-1 at 1-8); (2) a five page copy of a Non-Conformance Notice from E.T. Boggess Architects, Inc., to Carpenter,
dated March 17, 2011  (Exhibit B, Document 295-1 at 9-13); (3) a five page copy of the deposition of Randy
Carpenter, dated July 22, 2014 (Exhibit C, Document 29-15 at 13-18); (4) a nine page copy of the report of Tammy L.
St. Clair, dated December 2, 2013 (Exhibit D, Document 295-1 at 19-27); (5) a ten page copy of the deposition of
Tammy L. St. Clair, dated July 29, 2014 (Exhibit E, Document 295-1 at 28-29) (6) an eleven page copy of the Project
Manual for LES Early Site Package, dated November 20, 2009 (Exhibit F, Document 295-1 at 30-40); (7) a five page
copy of the deposition of David Marshall, dated July 29, 2014 (Exhibit G, Document 295-1 at 41-45); (8) an eight page
copy of the deposition of Greg Boso, dated July 30, 2014 (Exhibit H, Document 295-2 at 1-8); (9) a three page copy of
the deposition of Roger Carpenter, dated July 22, 2014 (Exhibit I, Document 295-2 at 9-11); (10) a one page copy of
an email from Judy McConkey to Randy, dated August 11, 2011 (Exhibit J, Document 295-2 at 12); (11) an eight page
letter from Judy McConkey to Carpenter Reclamation, dated March 30, 2012 (Exhibit K, Document 295-2 at 13-20);
(12) a an eight page copy of a letter from Judy McConkey to Carpenter Reclamation, dated February 22, 2013 (Exhibit
L, Document 295-2 at 21-28); and (13) a twenty-three page copy of a letter from Judy McConkey to Carpenter
Reclamation and its counsel, dated May 7, 2013 (Exhibit M, Document 295-2 at 29-51).

*Damages, and, in the Alternative, Motion to Realign the Parties* (Document 296),[16] and a

*Supplemental Memorandum of Law in Support of Supplemental Motion for Partial Summary*

*Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and Damages,*

*and, in the Alternative, Motion to Realign the Parties* (Document 297).[17]   On August 19, 2014,

Westfield filed its *Response to Carpenter Reclamation Inc.'s Supplemental Motion for Partial or*

*Summary Judgment on Insurance Coverage and for Partial Summary Judgment on Liability and*

---

16       Carpenter attaches the following as exhibits to its *Supplemental Motion for Partial or Summary Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and Damages, and, in the Alternative, Motion to Realign the Parties* (Document 296): (1) a thirty-nine page copy of the deposition of Judy McConkey, dated July 18, 2014 (Supplemental Exhibit 1, Part 1, Document 296-1); (2) a twenty-nine page copy continuation of the deposition of Judy McConkey, dated July 18, 2014 (Supplemental Exhibit 1, Part 2, Document 296-2); (3) a two page copy of work product notes of Judy McConkey, dated July 15, 2013 (Supplemental Exhibit 2, Document 296-3); (4) an eight page copy of the BOE's Petition for Declaratory Relief and Award(s) and Judgment for Breach of Contract, undated (Supplemental Exhibit 3, Document 296-4); (5) an eight page copy of a letter from Judy McConkey to Carpenter Reclamation, dated March 30, 2012 (Supplemental Exhibit 4, Document 296-5); (6) an eight page copy of a letter from Judy McConkey to Carpenter Reclamation, dated February 22, 2013 ((Supplemental Exhibit 5, Document 296-6); (7) a twenty-three page copy of a letter from Judy McConkey to Carpenter Reclamation and its counsel, dated May 7, 2013 (Supplemental Exhibit 6, Document 296-7); (8) a three page copy of a letter from Carpenter's counsel to Westfield's counsel, dated August 4, 2014 (Supplemental Exhibit 7, Document 296-8); (9) a three page copy of a letter from Carpenter's counsel to Westfield's counsel, dated August 4, 2014 (Supplemental Exhibit 8, Document 296-9); (10) a two page copy of a topography map or schematic of the LES build site, undated (Supplemental Exhibit 9, Document 296-10); (11) a four page copy of Westfield's Answers to Carpenter Reclamation, Inc.'s Fourth Set of Request for Admission, dated April 11, 2014 ((Supplemental Exhibit 10, Document 296-11); (12) a three page copy of charts and notes, undated (Supplemental Exhibit 11, Document 296-12); (13) a twenty-five page copy containing various addendums to the LES Bid Documents, dated No0vember 17, 2010 through December 7, 2010 (Supplemental Exhibit 12, Document 296-13); (14) a one page letter from Swope Construction to E.T. Boggess, dated March 22, 2011 (Supplemental Exhibit 13, Document 296-14); (15) a two page copy of an email from Phillip Reed of Terradon to various parties, dated March 30, 2011 (Supplemental Exhibit 14, Document 296-15); (16) a one page copy of an email from Phillip Reed to Randy Carpenter, dated February 28, 2013 (Supplemental Exhibit 15, Document 296-16); (17) an eight page copy of the deposition of Roy Sexton, dated July 30, 2014 (Supplemental Exhibit 16, Document 296-17); (18) a fifteen page copy of the deposition of Tammy L. St. Clair, dated July 29, 2014 (Supplemental Exhibit 17, Document 296-18); (19) a fifty-five page copy of a Preliminary Report of Findings for a Civil Action by Greg Boso, dated December 20, 2013 (Supplemental Exhibit 18, Document 296-19); (20) a thirty-five page copy of a letter from James R. Mahurin to Carpenter's counsel, dated May 6, 2014, and an attached report, dated May 6, 2014 ((Supplemental Exhibit 19, Document 296-20); (21) a nineteen page copy of a letter-form report from R. Gregory McDermott to Carpenter's counsel, dated December 20, 2013 (Supplemental Exhibit 20, Document 296-21); and (22) a nine page copy of an Appendix consisting of a Supreme Court of British Columbia case, *Danric Construction et al v. Canadian Surety Company*, 2002 BCSC 1663 (Dec. 2, 2002) (Supplemental Exhibit 21, Document 296-22).

17       The Court notes that Carpenter tendered a twenty-two page "supplemental motion," as well as a twenty-one page "supplemental memorandum."   Such a submission flouts Rule 7.1(a)(1) of the Local Rules of Civil Procedure, which states that "[a]ll motion shall be concise, [and] state the relief requested precisely . . ."   *See* L. R. Civ. P. 7.1(a)(1).   The Court finds that Carpenter has instead tendered argument in its motion, and further finds that Document 296 and any argument contained therein shall be disregarded except for its notice of the filing of a supplemental memorandum and attached exhibits.   The Court further notes that it previously ordered Carpenter to comply with the Local Rules of Civil Procedure.   (*See* Document 69.)

*Damages and in the Alternative, Motion to Realign the Parties* (Document 301),[18] while
Carpenter filed its *Response to Westfield's Supplemental Memorandum in Support of Westfield's
Motion for Summary Judgment on Insurance Coverage Issues, and in Further Support of
Carpenter Reclamation's Motion for Partial Summary Judgment on Liability and Damages*
(Document 302)[19] on that same date.   On August 26, 2014, Westfield filed its *Reply to Carpenter
Reclamation Inc.'s Response to Supplemental Memorandum in Support of Westfield's Motion for
Summary Judgment on Insurance Coverage Issues* (Document 307),[20] and on that same date,
Carpenter filed its *Reply to Westfield's Response to Carpenter Reclamation's Supplemental
Motion for Partial or Summary Judgment on Insurance Coverage Issue, and for Partial Summary*

---

18      Westfield attaches the following to its *Response to Carpenter Reclamation Inc.'s Supplemental Motion for
Partial or Summary Judgment on Insurance Coverage and for Partial Summary Judgment on Liability and Damages
and in the Alternative, Motion to Realign the Parties* (Document 301): (1) a six page copy of the deposition of James
Mahurin, dated August 8, 2014 (Exhibit A, Document 301-1 at 1-4); (2) a three page copy of the deposition of Judy
McConkey, dated July 18, 2014 (Exhibit B, Document 301-1 at 5-7).
19      Carpenter attaches the following to its *Response to Westfield's Supplemental Memorandum in Support of
Westfield's Motion for Summary Judgment on Insurance Coverage Issues, and in Further Support of Carpenter
Reclamation's Motion for Partial Summary Judgment on Liability and Damages* (Document 302): (1) a thirty five
page copy of the BOE's Amended Petition/Complaint of Plaintiff Pursuant to Order Entered October 29, 2013, dated
November 7, 2013 (Supplemental Exhibit 3A, Document 302-1); (2) a ten page copy of the Early Site Package for
LES, dated November 20, 2009 (Supplemental Exhibit 3B, Document 302-2); (3) a seventeen page copy of
Westfield's Second Supplemental Answers to Carpenter's First Set of Requests for Production of Documents, dated
December 23, 2013 (Supplemental Exhibit 3C, Document 302-3); (4) a two page copy of Westfield's Answer to
Carpenter's First Set of Interrogatories and Requests for Production of Documents, dated September 19, 2013
(Supplemental Exhibit 3D, Document 302-4); (5) a twenty-seven page copy of a Settlement Agreement and Release in
the state court action, undated, and exhibits to that agreement (Supplemental Exhibit 3E, Document 302-5); (6) a
sixteen page copy of the deposition of Tammy L. St. Clair, dated July 29, 2014 (Supplemental Exhibit 17A, Document
302-6); (7) a three page copy of the deposition of Randy Carpenter, dated July 22, 2014 (Supplemental Exhibit 21,
Document 302-7); (8) a three page copy of the deposition of David Marshall, dated July 29, 2014 (Supplemental
Exhibit 22, Document 302-8); (9) a six page copy of the deposition of Greg Boso, dated July 30, 2014 (Supplemental
Exhibit 23, Document 302-9); and (10) a three page copy of the deposition of Roger Carpenter, dated July 22, 2014
(Supplemental Exhibit 24, Document 302-10).
20      Westfield attaches the following as an exhibit to its *Reply to Carpenter Reclamation Inc.'s Response to
Supplemental Memorandum in Support of Westfield's Motion for Summary Judgment on Insurance Coverage Issues*
(Document 307): (1) an eleven page copy of the deposition of Judy McConkey-Ellis, dated July 18, 2014 (Exhibit A,
Document 307-1).

*Judgment on Liability and Damages, & in the Alternative Carpenter Reclamation's Motion to Realign the Parties* (Document 308).[21]

## II.      STANDARD OF REVIEW

### A.  Summary Judgment

The well established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c);

---

[21]        Carpenter attaches the following as exhibits to its *Reply to Westfield's Response to Carpenter Reclamation's Supplemental Motion for Partial or Summary Judgment on Insurance Coverage Issue, and for Partial Summary Judgment on Liability and Damages, & in the Alternative Carpenter Reclamation's Motion to Realign the Parties* (Document 308): (1) an eight page copy of the BOE's Petition in state court, undated (Reply Exhibit 1, Document 308-1); (2) a thirty-two page of the BOE's Amended Petition in state court, dated November 7, 2011 (Reply Exhibit 2, Document 308-2); (3) a four page copy of drawing and schematics from Terradon, undated (Reply Exhibit 3, Document 308-3); (4) an eleven page copy of the LES Early Site Package, dated November 20, 2009 (Reply Exhibit 4, Document 308-4); (5) a three page copy of an email from Philip Reed to various parties, dated March 30, 2011 (Reply Exhibit 5, Document 308-5); (6) a two page copy of various change order forms, both dated September 10, 2012 (Reply Exhibit 6, Document 308-6); (7) an eleven page copy of a non-conformance notice and field observation report, both dated March 17, 2011, and various pictures (Reply Exhibit 7, Document 308-7); (8) a thirteen page copy of the deposition of Randy Carpenter, dated July 22, 2014 (Reply Exhibit 8, Document 308-8); (9) a thirteen page copy of the deposition of Judy McConkey-Ellis, dated July 18, 2014 (Reply Exhibit 9, Document 308-9); (10) a three page copy of the deposition of Greg Boso, dated July 30, 2014 (Reply Exhibit 10, Document 308-10); (11) a ten page copy of the deposition of David Marshall, dated July 29, 2014 (Reply Exhibit 11, Document 308-11); (12) a three page copy of a Standard Form of Agreement Between Owner and Contractor, dated February 15, 2010 (Reply Exhibit 12, Document 308-12); (13) a two page copy of a letter from Terradon to E.T. Boggess Architects, dated July 27, 2011 (Reply Exhibit 13, Document 308-13); (14) a seventeen page copy of the deposition of Roger Carpenter, dated July 22, 2014 (Reply Exhibit 14, Document 308-14); (15) a twelve page copy of a letter form report from Paul Marshall to counsel for Carpenter, dated December 20, 2013 (Reply Exhibit 15, Document 308-15); (16) a twenty-one page copy of a report from Greg Boso, dated December 20, 2013 (Reply Exhibit 16, Document 308-16); (17) a two page copy of schematics and drawings, undated (Reply Exhibit 17, Document 308-17); (18) a three page copy of a chart and notes to contractor, dated August 24, 2009 (Reply Exhibit 18, Document 308-18); (19) a fifteen page copy of a letter-form report from James Mahurin, dated May 6, 2014 (Reply Exhibit 19, Document 308-19); (20) an eleven page copy of the deposition of James Mahurin, dated August 8, 2014 (Reply Exhibit 20, Document 308-20); (21) a ten page copy of a letter-form report from R. Gregory McDermott, dated December 20, 2013 (Reply Exhibit 21, Document 308-21); (22) a seventeen page copy of the deposition of Tammy L. St. Clair, dated July 29, 2014 (Reply Exhibit 22, Document 308-22); and (23) a thirteen page copy of the deposition of Roy L. Sexton, dated July 30, 2014 (Reply Exhibit 23, Document 308-23).

*see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position.   *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.   On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an  essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

B. *Determination of Insurance Policy Coverage*

The Supreme Court of Appeals of West Virginia has instructed that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Tennant v. Smallwood,* 211 W.Va. 703, 706, 568 S.E.2d 10 (2002) (citation and quotation omitted). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 815–16, 172 S.E.2d 714 (1970) (citations omitted).

On the other hand, if a policy's provisions are ambiguous they will be liberally construed in favor of the insured. *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156 (1986) (citations omitted) ("since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured.") However, "such construction should not be unreasonably applied to contravene the object and plain intent of the parties." Syl. Pt. 6, *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997) (quoting Syl. Pt. 2, *Marson Coal Co. v. Ins. Co. of State of Pennsylvania*, 158 W.Va. 146, 210 S.E.2d 747 (1974)). A policy provision is ambiguous if it is "reasonably susceptible of two different meanings or . . . of *such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning*." *Glen Falls Inc. Co. v. Smith*, 217 W.Va. 213, 617 S.E.2d 760, 768 (2005) (quoting Syl. Pt. 5, *Hamric*, 499 S.E.2d 619 (emphasis in original)).

If coverage is not intended to apply, the policy should clearly indicate that insurance is not available. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain and clear, placing

20

them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured."  *Satterfield v. Erie Ins. Property and Cas.,* 217 W.Va. 474, 479, 618 S.E.2d 483, 487 (quoting Syl pt. 10, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), overruled on other grounds by *Potesta v. U.S. Fidelity & Guard. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998)).

## III.    DISCUSSION

Both parties filed their respective motions for summary judgment on the same day, August 30, 2014.  (*Accord* Documents 107 & 109).  Together, the parties have submitted hundreds of pages dedicated to argument and thousands of pages of exhibits focusing on both the liability and damages aspects of the case.  For clarity and ease of reference, however, the Court will first consider the arguments pertaining to whether Westfield had a duty to defend or indemnify Carpenter based on the claims the BOE made in the underlying state declaratory judgment action and based on the language of the applicable CGL Policy.

Westfield acknowledges that under West Virginia law, liability insurance creates or imposes two duties on insurers:  the duty to defend and the duty to provide coverage.  (*Id*) (internal citation omitted.)   However, it strongly argues that it had no duty to defend or indemnify Carpenter because the alleged shortcomings in Carpenter's work, which were the basis of the state court declaratory action, arose from an alleged breach of contract that did not involve bodily injury or property damage caused by an occurrence or accident.  (*See* Document 107 at 14.)   It points out that neither party is alleging bodily injury as it is defined under the CGL Policy.  (*Id.*) Moreover, Westfield stresses that the BOE did not present a claim for property damage, but instead

the BOE asserted a claim for breach of contract against Carpenter alleging that it failed to "complete its work according to the specifications of the contract, requiring other contractors to complete Carpenter's deficient work."   (*Id.* at 15-16.)

Further, Westfield contends that "the only claims at issue were for the costs associated with replacing the non-conforming fill, modifying the plumbing, and completing contractual testing." (*Id.* at 16.)   It maintains that "no building or other tangible property was alleged to have been damaged and the BOE did not seek to recover for the loss of use of any property."   (*Id.*)   Too, Westfield argues that the alleged loss did not arise from an "occurrence, defined by the Policy as an accident," as the term has been construed under West Virginia law.   (*Id.* at 16) (internal quotations and citations omitted.)   It claims that "[t]o be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual."   (*Id.*) (internal quotations and citations omitted.)

Westfield argues that according to the report of the BOE's retained expert, Tammy St. Clair, the unauthorized excavation (beyond that called for in the contract) was filled by Carpenter with Class B fill, and not the Class A fill as was specified.   (*Id.* at 16.)   "By installing inappropriate fill material, Carpenter did not conform to the specifications (non-conforming work)."   (*Id.* at 16-17.)   It avers that the report also stated that because of Carpenter's unauthorized fill material, both Swope and Dougherty had to remove certain areas of fill and replace it with lean concrete, in accordance with the contract specifications.   (*Id.* at 17.)   As a result, Westfield argues that "it is clear that no property damage or occurrence was alleged by the BOE.   Instead, all of the BOE's allegations relate to Carpenter's decision to use non-conforming fill material and the costs associated with correcting that decision, and Carpenter's use of a

defective liner which simply had to be replaced . . ." (*Id.*)   It stresses that coverage is unavailable under the Commercial Umbrella Coverage provisions of the CGL Policy for the same reasons: that there was "no claim by the BOE for either bodily injury or property damage as defined by the Commercial Umbrella provisions of the Policy." (*Id.*)   The definitions for bodily injury and property damage under the Commercial Umbrella provisions are identical to those under the General Liability Coverage.   (*Id.*)

Westfield admits that under the recent West Virginia Supreme Court of Appeals case, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508 (W.Va. 2013), defective workmanship can give rise to a covered occurrence under a CGL Policy.   (*Id.* at 18.)   It maintains, however, that the defective workmanship must still cause bodily injury or property damage.   (*Id.*)   Here, Westfield argues that no tangible property was alleged to have been damaged by Carpenter's work, and thus, it is "entitled to judgment as a matter of law that the BOE's claims did not trigger coverage under the Policy."   (*Id.*)

Carpenter disagrees, and responds that the alleged "overblasting/over-excavation causing physical harm to subsurface rock below the particular LES Grading Contract limits of excavation of El. 2,188.83 is, without dispute, beyond and outside the scope of Carpenter's work under the [LES] Grading Contract . . ."   (Document 112 at 2) (internal quotations and emphasis omitted). Carpenter also contends that the exclusionary clauses in the CGL Policy do not apply, but if they did apply, they are ambiguous.   (*Id.*)   It claims that the BOE's allegations in state court were not founded on breach of contract because they did not expressly indicate a claim for breach against Carpenter and did not use the phrase "breach of contract."   (*Id.* at 8.)   Instead, Carpenter argues that the BOE's allegations "constitute, at least potentially, negligence, defective construction, and

23

faulty workmanship activities causing an accident in the form of unexpected and unusual physical harm to BOE's subsurface rock."   Carpenter claims that the allegations, therefore, constitute "an occurrence of covered property damages at least potentially within the CGL coverage provisions, triggering insurance coverage, and the duty to defend and indemnify Carpenter."   (*Id.* at 9.)

Carpenter argues that Terradon, BOE's civil engineer, stated that the "[t]he primary question is whether or not the site was over blasted, or blasted to a depth deeper than that required by the project specs."   (*Id.* at 10.)   Carpenter contends that the denial letters from Ms. Judy McConkey, Westfield's claims specialist, are "contradictory and erroneous."   (*Id.*)   It cites *Cherrington* and claims that case involved "virtually identical terms, provisions and facts" as the case at bar.   (*Id.* at 13.)

Carpenter maintains that the overblasting was "unexpected and unusual separate acts, events and happenings" resulting in "physical harm and damage, i.e. alleged "excess depth of blasting up to 9 feet below El. 2,188.83, beyond the particular specified limits of excavation in the LES Grading Contract," and that this "qualifies as physical injury to tangible property."   (*Id.* at 13) (internal citations, emphasis and quotations omitted.)   Carpenter dedicates the remaining sections of its brief to arguing why certain exclusions are inapplicable, and concludes by stating that "[g]enuine issues of material fact are in dispute as to Westfield['s] duties to defend and indemnify Carpenter in the underlying proceeding.   Westfield's CGL Policy covers BOE's claims."   (See Document 112 at 14-20.)

Westfield replies that the lone issue of this declaratory action is "whether or not [Westfield] had a duty to defend or indemnify [Carpenter] with respect to the [BOE's] claims in the underlying litigation."   (Document 120 at 1.)   Westfield notes that the blasting contract

24

"expressly contemplated that some of the blasting would result in overblasting or excavation of the bedrock below the specified depth," and that in that scenario, Carpenter was required to "then backfill with a particular kind of fill material so that the contractors doing the construction would be able to dig through fill material instead of bedrock and then replace that fill material with concrete so that the building rested on a foundation as strong as the bedrock itself."  (*Id.* at 2-3.)

Westfield stresses that "[t]his requirement was also expressly set forth in the Specifications attached to Carpenter's Response as Exhibit 18."  That section states that any "unauthorized excavation under foundations or wall footings" will need to be filled with lean concrete, consisting of 28 day compressive strength of 1000 psi, "when approved by Architect."  (*Id.* at 3) (internal citation and reference omitted.)

Westfield avers that:

> Carpenter was to provide a building pad of 3 ½ foot deep Class A fill to an elevation of 2, 192.33 feet and any blasting excavations below 2,188.83 feet were to be filled with lean concrete so that the 3 ½ foot of Class A fill rested upon bedrock or its equivalent.

(Document 120 at 3-4.)  Westfield summarizes Carpenter's alleged non-conformance, including the use of fill material that was not to specifications due to the presence of Class B fill material at unauthorized depths.  (*Id.* at 4.)  It argues that the allegations in the BOE's  state court action were not that Carpenter "blasted too deep or somehow damaged the BOE's property," but "[i]nstead [that Carpenter] failed to use the proper fill materials (the 3 ½ feet of Class A fill and lean concrete for excavations below 3 ½.)"  (*Id.*)

Contrary to Carpenter's assertion, Westfield maintains that "the BOE did not seek to recover for damage to its property," but rather "sought authority to accept claims for payment for the remediation of Carpenter's non-conforming work and for the authority to apply Carpenter's

contract retainage to pay for that work." (*Id.* at 5) (internal quotation omitted.) Westfield disagrees with the characterization that the BOE's allegations were based on negligence or defective workmanship. It argues that any claim that the rock was somehow damaged, and, therefore, triggered coverage under the policy, due to property damage, is nonsensical because Carpenter was retained precisely to pulverize and damage the rock. (*Id.* at 6.)

Westfield opposes the characterization of overblasting as an accident, covered by the policy, because this characterization ignores "the fact that the BOE recognized that blasting would cause unauthorized excavation below the required elevation and its contract specifications expressly provided for how such unauthorized over-excavation was to be addressed." (*Id.*) (citing Document 120 at 6-7, Exhibit A.) It argues that this contemplated over excavation cannot be an accident under West Virginia law as it was not "a chance event or event arising from unknown causes." (*Id.*) (internal citation omitted.)

As previously mentioned, following the resolution of the discovery conflict, both parties submitted a new round of supplemental motions, responses, and replies directed at whether Westfield had a duty to defend and/or indemnify, whether it acted in bad faith when it elected not to do so, and if the duty existed, the amount of damages. The Court notes that most of the argument, specifically that relevant to the Court's initial analysis of Westfield's duty, is simply repetitious of earlier submissions.

The Court finds that the BOE's Petition(s), which would have framed the substance and nature of the claims, upon which Westfield made its coverage determination, did not allege an occurrence resulting in property damage, as defined under the pertinent CGL Policy. Thus, Westfield had no duty to defend because coverage was not triggered under the plainly worded

26

terms of the CGL Policy.   The Court makes this determination after considering all of the parties' submissions, including cited evidence, and viewing it and all reasonable inferences therefrom in Carpenter's favor.   The Court rejects, as illogical, Carpenter's argument that the over blasting somehow damaged the BOE's property because it caused property damage to the very rock which was to be excavated via blasting, or alternatively, damaged sub-surface rock below the excavation site at El 2,188.83'.   Westfield has carried its burden to show that there is no genuine issue of material fact.

Relevant to the Court's determination is the undisputed fact that the BOE's Petition(s) incorporated the relevant contract between the parties, which in turn incorporated several documents, one of which—the Early Site Work Package—expressly contemplated that some "unauthorized excavation" would occur, and further detailed what kind of fill material should be used in such an event.

Further, it is undisputed that the contract called for excavation 3 ½ feet below what was to be the foundation, and, again, specified what class of fill needed to be employed.   That Carpenter allegedly blasted too deep and then purportedly used the wrong fill material formed the basis of the other parties' issues with Carpenter's work, and their resulting claims to the BOE for remediation and increased costs.   Thus, it asked the state court to declare the rights and obligations of the parties.   There was no allegation of property damage.

The Court finds that Carpenter's reliance on *Cherrington* is misplaced.   While it is true that *Cherrington* held that "defective workmanship causing bodily injury or property damage can be an occurrence under a policy of commercial general liability insurance," the facts of *Cherrington* and those at bar are distinguishable.   *Cherrington*, 745 S.E.2d at 521.   *Cherrington*

27

involved a homeowner suing the contractor she hired in 2004 to build a home in Greenbrier County, West Virginia. *Id.* at 513. Specifically, "after the home was completed, Ms. Cherrington observed various defects in the house, including an uneven concrete floor on the ground level of the house; water infiltration through the roof and chimney joint; a sagging support beam; and numerous cracks in the drywall walls and partitions throughout the house." *Id.* She filed suit in 2006 against Pinnacle and Old White Interiors, and later amended her complaint in 2007 to add the contractor, Mr. Mamone, as a defendant.[22] She claimed Pinnacle was negligent in the construction of said home by, among other things, altering the design and negligently pouring and finishing the concrete floor. *Id.*

The Circuit Court of Greenbrier County, West Virginia, granted Erie's[23] motion for summary judgment, and, relevant to the instant dispute between Carpenter and Westfield, "concluded that Ms. Cherrington had failed to establish covered 'property damage' insofar as the damages she alleged in her complaint were economic losses for diminution in the value of her home or excess charges she was required to pay under the contract."[24] *Id.* at 514. The circuit court also found that Ms. Cherrington "had not established that an occurrence or accident had caused the damages she allegedly had sustained because faulty workmanship, in and of itself, or absent a separate event, is not sufficient to give rise to an occurrence." *Id.* (internal quotation and citation omitted.)

---

22      Ms. Cherrington entered into a "costs plus contract with Pinnacle for the construction of her home." *Id.* at 513. Mr. Mamone "worked on his own behalf vis-à-vis that portion of the parties' contract whereby Old White Interiors, LLC would provide furnishings for the home upon its completion. However, the exact role of Mr. Mamone in this business is not apparent." *Id.* Mr. Mamone also worked as an agent of Pinnacle, and "worked with Ms. Cherrington during the contract and construction process." *Id.* Erie Insurance provided policies in effect at the time of loss to Pinnacle and Mr. Mamone. *Id.* at 514.

23      Erie Insurance issued a CGL Policy to the defendants; which was practically identical to the one at issue here.

24      The Circuit Court also concluded, *arguendo*, that even if coverage were triggered, certain exclusions would bar coverage. *Id.* at 514.

28

The West Virginia Supreme Court of Appeals reversed the circuit court's decision, finding that defective workmanship resulting in property damage could constitute an occurrence under a CGL policy.   *Id.* at 520.   The West Virginia Supreme Court reached this result after "a plenary review of the coverage question squarely before us: does defective workmanship constitute an occurrence under a policy of CGL insurance?"   *Id.* (internal quotation omitted.)   In answering this question in the affirmative, that court revisited earlier rulings where coverage was denied based on the "blanket pronouncement that a policy of CGL insurance may never provide coverage for defective workmanship . . .".   They found such a ruling was unworkable in practical application and expressly overruled several earlier decisions finding that CGL insurance policies do not provide protection for poor workmanship.   *Id.* at 521. (internal citations omitted.)

The alleged overblasting resulting in purported property damage here is readily distinguishable from the defective workmanship causing property damage found in *Cherrington* for at least two reasons.   First, as the court in *Cherrington* held, "[i]n order for a claim to be covered by the subject CGL Policy, it must evidence 'bodily injury' or 'property damage' that has been caused by an occurrence."   *Cherrington*, 745 S.E.2d at 520. (emphasis added.)   Specifically, there the defective workmanship during the construction of a residential home led to the following property damage: water damage, cracked walls, sagging beams, and an uneven concrete foundation.   *Cherrington*, 745 S.E.2d at 513.   Here, by contrast, Carpenter was retained to excavate and prep the site before the actual construction of the LES, and its alleged non-conforming or "defective workmanship" did not otherwise damage the tangible property of the school or finished project.   There was no resulting property damage akin to the water leakage,

sagging beams, cracks in the drywall or uneven concrete floor that was found in *Cherrington*.[25] The Court has previously rejected the argument by Carpenter that the overblasting somehow led to property damage, either directly to the rock or an impairment of the subsurface rock underneath the excavation site.  There were absolutely no facts or allegations by the BOE, in its Petition(s), to support such a position.  The BOE has not sought to recover for damaged rock or subsurface—only for non-conforming work.

Carpenter's argument also fails on another front.  Even assuming *arguendo* that the BOE's Petition(s) alleged property damage, it was not because of, or due to, an occurrence or accident.  As in *Cherrington*, the term "accident" is not defined in the pertinent CGL Policy here, but accident has normally been defined under West Virginia law as "a chance event or event arising from unknown causes."  *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 492 (W. Va. 2004).  The United States District Court for the Southern District of West Virginia echoed an earlier West Virginia Supreme Court of Appeal finding that, "for an event to be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual."  *State Auto. Property and Cas. Ins. Co. v. Edgewater Estates, Inc.*, 2010 WL 1780253 at *3 (S.D. W.Va. April 29, 2010) (Faber, J.) (unreported) (internal quotations and citations omitted).  Additionally, the West Virginia Supreme Court has cautioned that when the term accident is referenced, but not defined, in an insurance policy "primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue."  *Cherrington*, 745 S.E.2d at 520. (referencing *Columbia Casualty Co. v. Westfield Insurance Co.*, 617 S.E.2d 797 (W. Va. 2005)).

---

[25]  The Court notes that it was alleged that Carpenter was required to place lean concrete on certain spots, but did not, and that Swope eventually poured the concrete and asked the BOE for appropriate funds.

30

Important to this Court's holding, and unlike in *Cherrington*, assuming one could say that property damage was incurred by the BOE, during Carpenter's pre-construction LES site work, there is no genuine issue of material fact that it was due to an occurrence or accident, or otherwise not within the contemplation of the BOE and Carpenter when they entered into their agreement. *Cherrington*, 745 S.E.2d at 520.   Again, the LES Early Site Package expressly contemplated that the LES site could be subject to "unauthorized" over excavation in the course of blasting, and that if this event occurred, Carpenter was to use a certain class of fill to remedy this issue.[26]   Blasting and excavating limestone with explosives is an imprecise endeavor, and the parties' agreements reference this working reality.[27]   Thus, the presence of any overblasting was an expected, quasi-intentional and/or foreseen event, and cannot now be considered an accident or occurrence under the terms of the CGL Policy and applicable West Virginia case law.

Carpenter places great importance on the fact that it was eventually "successful" in the underlying state court declaratory and breach of contract action.   The Court finds this argument unpersuasive.   As the West Virginia Supreme Court of Appeals held in *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581 (W. Va. 1988), "an insurer's duty to defend is normally tested by whether the allegations in the complaint against the insured are *reasonably susceptible of an interpretation* that the claim may be covered by the terms of the insurance policy," and, as a result, "there is no requirement that the facts alleged in the complaint against the insured specifically and unequivocally delineate a claim which, if proved, would be within the insurance coverage."

---

26      The Court notes that per the Early Site Work Package, Carpenter would have to potentially use fill material, if the situation called for it, even if it did not employ blasting or excavation.   (See Document 106-2 at 15, Section 3.15.)
27      Carpenter's expert, Mr. Boso, testified that various stone, rock and soil react differently to the same explosive force, and acknowledged that there would be variations between boring holes and the explosives, and that, ultimately, "the single plane to build" is the responsibility of the contractor through various methodologies, sequences, and techniques.   (*See* Exhibit H, Document 295-2 at 6-7.)

*Leeber*, 376 S.E.2d at 584. (emphasis added.)   The Court finds that the allegations in the BOE's Petition(s) against Carpenter were not reasonably susceptible to an interpretation that the contract dispute—concerning who had to do what, when, and to what degree—could be covered under the terms of the respective CGL Policy.   More reasonably, the allegations were susceptible to the interpretation that this was nothing more than a contract dispute between parties that did not involve property damage or personal injury arising out of an occurrence or accident, as defined by the policy.

Inasmuch as the Court has found that the BOE's petition did not allege or involve tangible property damage, and even if there was property damage, it did not arise from an occurrence or accident, it need not delve into the applicability of the various policy exclusions.   Additionally, the Court need not determine if any "bad faith" occurred because there was no duty on the part of Westfield to defend Carpenter in the first place based on the BOE's Petition(s) and language of the CGL Policy.   As the West Virginia Supreme Court has noted:

> The duty at issue in a bad faith breach of contract claim is the insurance company's duty to act in good faith and deal fairly with its insured . . . However, the insurance company is not called upon to perform this duty until some contractual duty imposed by the insurance policy has arisen. While the contractual duty and the duty to act in good faith are separate and distinct duties, they are related, and both must exist simultaneously to create a bad faith claim . . .

*Noland v. Virginia Ins. Reciprocal*, 686 S.E.2d 23, 37 (W. Va. 2009) (emphasis added) (citing approvingly *Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 228 (Colo. App. 2002) (superseded by statute on other grounds as recognized in: *Brodeur v. American Home Assur. Co.*, 169 P.3d 139 (Colo. 2007); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033 (Pa.Super.Ct. 1999)).

32

Accordingly, the Court **DECLARES** that Westfield had no duty to defend or indemnify Carpenter for those claims asserted in the BOE Petition(s).

## CONCLUSION

WHEREFORE, after careful consideration, based on the findings herein, the Court **ORDERS** that *Westfield Insurance Company's Motion for Summary Judgment on Insurance Coverage Issues* (Document 106) be **GRANTED** and that *Carpenter Reclamation, Inc.'s Motion for Partial or Summary Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and Damages* (Document 108) and *Supplemental Motion for Partial or Summary Judgment on Insurance Coverage, and for Partial Summary Judgment on Liability and Damages, and, in the Alternative, Motion to Realign the Parties* (Document 296) be **DENIED**.

The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT** and that this matter be **REMOVED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      September 17, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA